OPINION
{¶ 1} Defendant-appellant, Gregg N. Battersby, appeals the judgment of the Mentor Municipal Court, denying his motion to vacate his guilty plea to one count of Public Indecency, and imposing a sentence of thirty days in jail, with three days "credit" for the time Battersby spent doing community service. For the following reasons, we affirm the judgment of the lower court.
 {¶ 2} On June 22, 2006, Battersby was arrested and charged with one count of Public Indecency, a misdemeanor of the fourth degree, in violation of R.C. *Page 2 2907.09(A)(1). The charges arose from an incident occurring in Battersby's home, in which he exposed himself to a cleaning woman. On June 27, 2006, Battersby appeared for his arraignment, and entered a plea of not guilty to the charge.
 {¶ 3} On October 16, 2006, a hearing was held, during which time, Battersby changed his plea of not guilty to a plea of no contest. At the hearing, the judge reviewed the rights Battersby was waiving by entering his plea, as well as the the rights form Battersby had signed, and accepted his plea. Battersby's attorney informed the court of a psychological evaluation that Battersby had submitted to the court, and requested that a pre-sentence investigation report be completed prior to the imposition of his sentence, "for the ultimate recommendation of a diversion if [Battersby] adequately completes everything that Mr. Dragar [his probation officer] is looking for him to do."
 {¶ 4} Subsequent to the plea hearing, and pursuant to Dragar's recommendation, Battersby performed three of four recommended days of community service, and made a donation to the Mentor Public Library, in lieu of completing the fourth day.
 {¶ 5} The matter proceeded to sentencing on January 12, 2007. Prior to the hearing, Battersby retained new counsel and filed a "Motion to Enforce a Diversion Program." Battersby's former counsel, Mr. Ziccarelli, filed a motion to withdraw.
 {¶ 6} At the hearing, both attorneys appeared with Battersby. Prior to sentencing, the court addressed the pending motions before it. The court granted Ziccarelli's motion to withdraw, and, after hearing testimony from Ziccarelli, Dragar, and the victim's advocate, denied Battersby's Motion to Enforce a Diversion Program. *Page 3 
 {¶ 7} After denial of this motion, Battersby's new attorney made an oral motion to withdraw the plea, which was denied. The court subsequently imposed a sentence of thirty days, with three days credit for community service that Battersby had performed, and a fine of $250.00. Execution of the sentence was stayed, pending this appeal.
 {¶ 8} In the instant appeal, Battersby raises three assignments of error for our review:
 {¶ 9} "[1.] The Trial Court erred to the prejudice of the Defendant-Appellant, Gregg Battersby, in refusing to accept the diversion program.
 {¶ 10} "[2.] The Defendant-Appellant, Greg Battersby's, double jeopardy rights were violated by the Trial Court's refusal to grant diversion.
 {¶ 11} "[3.] The Trial Court Erred to the prejudice of the Defendant-Appellant, Gregg Battersby, by denying his motion for a new trial."
 {¶ 12} For discussion purposes, Battersby's assignments of error will be addressed out of order.
 {¶ 13} In his first assignment of error, Battersby contends that his performance of community service at the suggestion of the probation officer and his completion of a psychological evaluation, constituted a "de facto" completion of a Diversion Program, which required the prosecutor to recommend, and the trial court to accept, diversion in lieu of imposing sentence. We disagree.
 {¶ 14} Battersby premises his argument that the prosecution was required to recommend, and the trial court required to accept, diversion in lieu of sentencing on R.C. 2935.36(D), which states:
 {¶ 15} "If the accused satisfactorily completes the diversion program, the prosecuting attorney shall recommend to the trial court that the charges against the *Page 4 
accused be dismissed, and the court, upon the recommendation of the prosecuting attorney, shall dismiss the charges."
 {¶ 16} Put another way, R.C. 2935.36(D) provides that a defendant's successful completion of a diversion program shall result in a recommendation by the prosecutor of a nolle prosequi of the charges against him, and the acceptance of that recommendation by the court. See, e.g., Daher v. Cleveland (Mar. 28, 1985), 8th Dist. No. 48579, 1985 Ohio App. LEXIS 7511, at *5.
 {¶ 17} "R.C. 2935.36 permits the county prosecutor to operate a pretrial diversion program pursuant to written standards approved by the court." State v. Sneed (Jan. 8, 1986), 2nd Dist. No. CA 8837, 1986 Ohio App. LEXIS 5234, at *5 (citation omitted). "[T]he statute provides for prosecuting attorney discretion with regard to the establishment of the terms and conditions of such a diversion program." State v.Wallace, 5th Dist. No. 2006 CA 00024, 2007-Ohio-65, at ¶ 40. That said, the statute also "requires the participation of the court in the admission of persons into such program." Sneed, 1986 Ohio App. LEXIS 5234, at *5-*6 (emphasis added).
 {¶ 18} Battersby argues that his "de facto" completion of Probation Officer Dragar's recommendations, along with the mandatory language of R.C. 2935.36(D), compels this court to order the lower court to grant his motion for diversion. However, this argument ignores several other relevant provisions of the statute.
 {¶ 19} R.C. 2935.36(A), additionally provides:
 {¶ 20} "The prosecuting attorney may require, as a condition of the accused's participation in the program, the accused to pay a reasonable fee for supervision services that include, but are not limited to, monitoring and drug testing. The programs shall be operated pursuant to written standards approved by journal entry by the *Page 5 
presiding judge or, in courts with only one judge, the judge of the court of common pleas * * *." R.C. 2935.36(A).
 {¶ 21} Moreover, R.C. 2935.36(B) further provides that, "[a]n accused who enters a diversion program shall do all of the following:
 {¶ 22} "(1) Waive, in writing and contingent upon the accused'ssuccessful completion of the program, the accused's right to a speedy trial, the preliminary hearing, * * * and arraignment, unless the hearing, * * * or arraignment has already occurred;
 {¶ 23} "(2) Agree, in writing, to the tolling while in the program of all periods of limitation established by statutes or rules of court, that are applicable to the offense with which the accused is chargedand to the conditions of the diversion program established by theprosecuting attorney;
 {¶ 24} "(3) Agree, in writing, to pay any reasonable fee for supervision services established by the prosecuting attorney." (Emphasis added); accord State v. Washington (Apr. 26, 1995), 2nd Dist. No. 14559, 1995 Ohio App. LEXIS 1700, at *6. (Emphasis added).
 {¶ 25} In the case sub judice, there is no evidence in the record describing how the diversion program is conducted in Lake County. However, based upon the statutes and relevant case law, what is apparent is there must always be some affirmative evidence in the record, in the form of a signed and journalized Diversion Agreement between thedefendant and the prosecutor satisfying the aforementioned statutory requirements, and setting forth any other conditions imposed by the agreement, as well as a journalized order granting diversion. SeeJackson v. Friley, 4th Dist. No. 07CA1, 2007-Ohio-6755, at ¶ 28
("relevant diversion documents" are "the Prosecutor's Diversion Program Stipulation and Agreement" and "the [court's] Diversion Entry");Strickland v. *Page 6 Ohio Bur. Motor Vehicles (1994), 92 Ohio App.3d 755, 757 ("the terms and conditions of Diversion Program * * * set up by * * * Diversion Agreement"); Wallace, 2007-Ohio-65, at ¶¶ 32-34
("Stipluation/Agreement" entered into between defendant and prosecuting attorney, allowing the defendant to participate in the diversion program and imposing "general conditions for participation"); State v. Swank, 5th Dist. No. 02CA14-2, 2002-Ohio-3833, at ¶ 10 (appellant argued that he failed to complete the diversion program because he "did not sign [the] diversion agreement in the presence of [defense counsel]").
 {¶ 26} A review of the record reveals no evidence of any Diversion Agreement executed between Battersby and the prosecuting attorney, nor any evidence that the court journalized an order granting diversion based upon any such agreement.
 {¶ 27} Battersby's "agreement" with his probation officer for the completion of thirty-two hours community service, and his subsequent contribution to the Mentor Public Library, in lieu of completing the final day of recommended community service, though part of the record, fail, as a matter of law, to establish his "de facto completion" of a diversion program, since this alleged "agreement" was not made with aprosecuting attorney or court approval. Sneed, 1986 Ohio App. LEXIS 5234, at *7 ("[T]he approval of the court is required for * * * admission into the diversion program.").
 {¶ 28} Contrary to Battersby's assertions, there can be no "de facto completion" of a diversion program that does not meet the aforementioned formalities.
 {¶ 29} Appellant's first assignment of error is without merit.
 {¶ 30} In his third assignment of error, Battersby argues that the trial court erred to his prejudice by denying his oral motion for a new trial. A review of his argument *Page 7 
reveals that he is actually challenging the trial court's denial of his motion to withdraw his guilty plea.
 {¶ 31} Battersby argues that the court erred in not granting his pre-sentence motion to withdraw his guilty plea, since his plea of no contest rested "in [a] significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration." Santobello v. New York (1971), 404 U.S. 257, 262. We find no merit to this argument.
 {¶ 32} Crim.R. 32.1 governs withdrawal of pleas and states "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."
 {¶ 33} "Pre-sentence motions to withdraw a plea should be liberally granted, provided the movant provides a reasonable and legitimate basis for the withdrawal." State v. Hall, 2nd Dist. No. 21449, 2006-Ohio-6116, at ¶ 11 (citations omitted); State v. Glavic (11th Dist. 2001),143 Ohio App.3d 583, 587, citing State v. Xie (1992), 62 Ohio St.3d 521, 526. However, "[o]ne who enters a guilty [or no contest] plea has no right to withdraw it. It is within the sound discretion of the trial court to determine what circumstances justify granting such a motion."Xie, 62 Ohio St.3d at 526 (citations omitted). Accordingly, "the trial court's decision on a motion to withdraw will only be reversed when an abuse of discretion has occurred." State v. Mitchell (June 30, 1995), 11th Dist. No. 94-P-0070, 1995 Ohio App. LEXIS 2803, at *3 (citation omitted).
 {¶ 34} The court acts within its discretion in denying a motion to withdraw a guilty plea when the record demonstrates that "(1) the defendant was represented by highly competent counsel; (2) prior to accepting the plea, the trial court conducted a full *Page 8 
hearing on the matter, pursuant to Crim.R. 11; (3) the trial court conducted a full and impartial hearing on the motion to withdraw; and (4) the trial court gave full and fair consideration to the motion before denying it." Id. at *3 (citations omitted); Glavic,143 Ohio App.3d at 588, citing State v. Peterseim (1980), 68 Ohio App. 2d 211,214; State v. Powell, 10th Dist. No. 01AP-891, 2002-Ohio-1725, 2002 Ohio App. LEXIS 1673, at *7 (citations omitted).
 {¶ 35} Our review of the record reveals that all four of these conditions were met.
 {¶ 36} We note, at the outset, that Battersby entered his plea of no contest on October 16, 2006, which was prior to his performance of the alleged agreement between himself and Dragar, the probation officer. There was no evidence in the record of any promises made by the prosecutor prior to the entry of Battersby's plea. "[A] guilty plea is not required by the statute as a condition for admission into a diversion program." State v. Curry (1999), 134 Ohio App.3d 113, 118.
 {¶ 37} A review of the hearing transcript reveals that the trial court satisfied the first two elements of the Peterseim test. Prior to the entry of Battersby's plea, the trial court explained the maximum penalties for the charges. Battersby then consulted with his counsel, an experienced attorney, and entered a plea of no contest. Upon initial entry of this plea, Battersby was informed of the rights that he was waiving by entering a plea of no contest. The trial court explained the legal effect of a no contest plea. Battersby was asked if he understood his rights or if he had any questions regarding the rights he was waving. Battersby indicated that he understood and that he had no questions. The court subsequently made a finding that Battersby's plea was knowing and voluntary. Following entry of his plea, Battersby waived the taking of evidence and consented to a finding of guilty on the charge. The trial court then heard from the *Page 9 
victim's advocate, who testified that she wanted no reduction in his possible sentence, and would possibly require restitution, since she sought counseling after the incident.
 {¶ 38} Battersby's counsel informed the court that Battersby had voluntarily submitted to a psychological evaluation and requested that the court request a "pre-sentence report for the ultimate recommendation of a diversion." The trial court ended the hearing, indicating that it would order a pre-sentence report and take all of these matters under advisement in order to "give [Battersby] the proper sentence." At no time during this hearing did the trial court mention the possibility of diversion as an option.
 {¶ 39} At the sentencing hearing of January 12, 2007, the court conducted a hearing for the purposes of sentencing. Battersby's new attorney argued his "Motion to Enforce the Diversion Agreement," stating there was "some disagreement by some of the parties in this matter as to whether or not a diversion program was in effect or would be considered by [the] court, as well as by the Prosecutor's Office."
 {¶ 40} The court then heard the testimony of Mr. Ziccarelli, Battersby's former attorney, who testified, in relevant part, as follows, regarding the possibility of diversion:
 {¶ 41} "Mr. Ziccarelli: * * *
 {¶ 42} "The pretrial recommendation was with [Prosecutor] Lisa Klammer. She did not recommend diversion. She never, in my experience, has never recommended diversion because it's always up to the Court.
 {¶ 43} "And I recall being in front of the Court at the time of the plea, mentioning and requesting diversion at that time.
 {¶ 44} "Then the court indicated it would be referred for pre-sentence report, and that it would consider everything that was — — the Court would consider everything at the *Page 10 
time of sentencing. And the Court didn't indicate that it would grant diversion, but the court did hear our request for diversion * * *.
 {¶ 45} "The Court: Did you make any promises to Mr. Battersby that, `Hey, this is in the bag. You're going to get diversion.'
 {¶ 46} "Mr. Ziccarelli: Judge, I — no, I did not.
 {¶ 47} "The Court: Okay.
 {¶ 48} "Mr. Ziccarelli: I can't, because it's always up to the Court. And it's always been that way. It's always been that way for all the cases.
 {¶ 49} "But I did tell him that Lisa did not object to diversion."
 {¶ 50} Battersby's new attorney then raised the issue that Battersby had submitted to a psychological evaluation, and acknowledged that Battersby had done so voluntarily and without a court order. He then argued that diversion was appropriate, since Battersby had paid "all of the fees that would normally be associated with the diversion program." The trial court informed him that it had not yet decided whether diversion was appropriate, and that, Battersby had neither completed diversion, nor paid any fees associated with such a program.
 {¶ 51} Mr. Dragar, the probation officer, clarified that Battersby had done a "three day option in community service," and "did a donation to the library because we couldn't get the community service completed."
 {¶ 52} Following Dragar's testimony, the court clarified that Battersby "did not do anything to pay any diversion costs or anything along those lines. That's at the end of the case — after the court has granted the diversion and the person follows through with everything, there's a $300 fee that's paid at the end, and none of that has taken place * * *." *Page 11 
 {¶ 53} Dragar spoke again, and made his recommendations, arguing that although Battersby had done a community service option, he had also had a prior civil complaint against him for sexual harassment, arising from a "like situation," and therefore, recommended that a jail term was appropriate. The victim's advocate argued on behalf of the victim that "the case not be diverted and the defendant receive a conviction," and also requested restitution for the medication she was taking as a result of the incident; and that a no contact order remain in place.
 {¶ 54} Battersby's new attorney then formally raised an oral motion to vacate his prior plea, on the grounds that Battersby "misunderstood what he thought was going to happen," and thought that "the entire disposition would land up in a diversion situation."
 {¶ 55} The trial court reminded him of the testimony of Battersby's former attorney who stated there were "no promises and he never told [Battersby] he was going to get diversion."
 {¶ 56} While acknowledging this fact, Battersby's counsel stated that "nevertheless, for one reason or another, my client perceived this based upon the fact that he obtained psychological help and that in addition to doing the three days [community service] that he paid for —"
 {¶ 57} The court stated it considered these things "very good mitigating circumstances," but declined to vacate the plea on these grounds.
 {¶ 58} The foregoing demonstrates that the court gave a full and fair hearing and fully considered Battersby's motion to withdraw his plea before denying it. It is undisputed that the prosecution did not recommend, nor did the trial court make, any orders for Battersby to perform community service or secure a psychological evaluation prior to sentencing. It is also undisputed that the fees normally associated with *Page 12 
diversion were to be paid only after diversion had been granted, and that Battersby had not paid any such fees. It was further undisputed that the prosecutor never made any recommendation for diversion, although it was indicated that she would not object were the court to impose it. It is a well-settled principle of law that "a nolleprosequi can be entered only with the affirmative consent of the prosecution," and a court cannot "enter a nolle prosequi over the prosecutor's objection." Cleveland v. Mosquito (1983),10 Ohio App.3d 239, 241 (citation omitted); accord, Cleveland v. Buchanon (July 7, 1983), 8th Dist. No. 46046, 1983 Ohio App. LEXIS 12825, at *8 (citation omitted). Finally, although the defense asked for diversion prior to the sentencing hearing, Battersby's former counsel testified that the grant of diversion was always a matter reserved to the court and thus, he made no promises to Battersby that diversion was forthcoming.
 {¶ 59} With regard to pre-sentencing motions to withdraw pleas, "[a] defendant is not entitled to withdraw his * * * plea merely because he has changed his mind or because he has learned that he will receive a harsher sentence than he had subjectively expected." Powell, 2002 Ohio App. LEXIS 1673, at *9, citing State v. Lambros (1988),44 Ohio App.3d 102, at paragraph three of the syllabus; accord, Mitchell, 1995 Ohio App. LEXIS 2803, at *6. "Otherwise, defense counsel merely has to allege that the defendant's plea was induced by some underlying `mistaken belief that the defendant would receive probation and the plea would be vacated." Lambros, 44 Ohio App.3d at 103 (citation omitted).
 {¶ 60} Based upon the foregoing, the trial court did not abuse its discretion in denying Battersby's motion to withdraw his plea.
 {¶ 61} Battersby's third assignment of error is without merit. *Page 13 
 {¶ 62} In his second assignment of error, Battersby argues that his sentence of twenty-seven days in jail, following his compliance with "all of the Trial Court's and the Probation Department's mandates for diversion," violated his right not to be subject to double jeopardy for the same offense. We disagree.
 {¶ 63} "The Double Jeopardy Clauses of the Ohio and United States Constitutions protect the accused from (1) multiple prosecutions for the same offense and (2) multiple punishments for the same offense."State v. Wyand (Apr. 25, 1997), 11th Dist. No. 96-P-0211, 1997 Ohio App. LEXIS 1709, at *11 (citations omitted). "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." Id., quoting Schiro v. Farley, (1994),510 U.S. 222, 229.
 {¶ 64} With regard to sentencing, a "consideration implicit in the guarantee against multiple punishments is `akin to that * * * served by the doctrine of res judicata and collateral estoppel — to preserve the finality of judgments.'" Id. at *14, quoting Crist v. Bretz (1978),437 U.S. 28, 33. Thus, "a court violates a defendant's right to be free from double jeopardy when it attempts to enhance a defendant's sentence after he acquires a legitimate and reasonable expectation of finality in the severity of his sentence. Id. at *16 (citation omitted).
 {¶ 65} In the instant matter, Battersby acquired no such "legitimate and reasonable expectation of finality." "Under the multiple punishment component of the Double Jeopardy Clause, * * * the inquiry focuses upon whether the accused has been (1) punished twice for (2) the same offense by (3) separate proceedings." State v. Musick (11th Dist. 1997),119 Ohio App.3d 361, 372 (citations omitted) (emphasis added). *Page 14 
 {¶ 66} Even if we were to accept, for the sake of argument, that Battersby's community service and donation to the library were "punishment" for the purposes of the Double Jeopardy Clause, the fact remains that neither of these sanctions were imposed by the court inany proceeding, let alone separate proceedings. The record plainly indicates that Battersby's assumption of these "punishments," including obtaining a psychological evaluation, participating in three days of community service, and making the donation were strictly voluntary.
 {¶ 67} Moreover, although the trial court inartfully stated it was giving Battersby three days jail time "credit" for his community service and the donation, this was not a reduction of sentence for "prior confinement" as is contemplated by R.C. 2949.08. Nor was his payment directly to the public library was a "fine," since, according to R.C.2949.111(B), such payments must be made directly to the clerk of the court. There is simply nothing in the record to lead us to conclude otherwise, and thus, we agree with the trial court's conclusion that these were "mitigating factors" to be considered during sentencing, rather than prior punishments imposed by the court.
 {¶ 68} Appellant's second assignment of error is without merit.
 {¶ 69} For the foregoing reasons, we affirm the judgment of the Mentor Municipal Court. Costs to be taxed against appellant.
CYNTHIA WESTCOTT RICE, J., concurs, COLLEEN MARY OTOOLE, J., concurs in judgment only. *Page 1