[Cite as *State v. Foster*, 2021-Ohio-1454.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 14-20-26

    v.

ANDREW K. FOSTER,

                                  **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Trial Court No. 20CR0098

**Judgment Affirmed**

**Date of Decision: April 26, 2021**

APPEARANCES:

    *Alison Boggs* **for Appellant**

    *Raymond Kelly Hamilton* **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant, Andrew K. Foster ("Foster"), appeals the November 25, 2020 judgment of the Union County Court of Common Pleas, journalizing his conviction after pleading guilty to one count of second-degree felony engaging in a pattern of corrupt activity, one count of fourth-degree felony grand theft, and one count of fifth-degree felony breaking and entering, and sentencing him to an aggregate indefinite prison term of 10 ½ to 14 ½ years.

{¶2} On appeal, Foster argues that trial court erred when it overruled his oral motion to withdraw his guilty plea at sentencing. He also claims that his sentence is contrary to law because the trial court sentenced him to an indefinite prison term on a non-qualifying second-degree felony and because the trial court failed to adequately consider the purposes and principles of felony sentencing under R.C. 2929.11 and R.C. 2929.12 when it imposed the maximum prison terms on each count and when it ordered the prison terms to run consecutively. Foster further asserts that the trial court erred when it ordered him to pay restitution.

*Relevant Facts and Procedural History*

{¶3} On June 19, 2020, the Union County Grand Jury returned an eighteen-count indictment against Foster alleging that he committed the offenses of Count 1: engaging in a pattern of corrupt activity, a felony of the second degree, in violation of R.C. 2923.32(A)(1), (B)(1); Count 2: grand theft, a felony of the fourth degree,

in violation of R.C. 2913.02(A)(1), (B)(2); Count 3: attempted breaking and entering, a misdemeanor of the first degree, in violation of R.C. 2923.02 and R.C. 2911.13(A); Counts 4 through 17: breaking and entering, all felonies of the fifth degree, in violation of R.C. 2911.13(A), (C); and Count 18: theft, a felony of the fifth degree in violation of R.C. 2912.03(A)(1), (B)(2). Upon arraignment, Foster entered pleas of not guilty to the charges.

{¶4} The charges arose from a series of fifteen breakings and enterings of convenience and cigarette stores alleged to have been done by a "crew" of individuals, during which the lock cylinders were removed from the doors to allow the crew to gain access to cigarettes and other items that were later traded or sold for crack cocaine and money. These crimes took places in multiple counties, including Union County, and amounted to an aggregate loss in excess of $29,000.00 to the victims. Investigation by law enforcement revealed that Foster, a former locksmith, was the leader and organizer of the crew and the individual who removed the lock cylinders from the doors.

{¶5} On October 22, 2020, Foster withdrew his previously tendered pleas of not guilty and entered guilty pleas to Count 1, second-degree felony engaging in a pattern of corrupt activity; Count 2, fourth-degree felony grand theft; and Count 13, fifth-degree felony breaking and entering. In exchange for Foster's guilty pleas, the prosecution agreed to dismiss the remaining fifteen counts listed in the indictment.

The prosecution also agreed not to present a sentencing recommendation to the court. The trial court then accepted Foster's guilty pleas and ordered the completion of a presentence investigation.

{¶6} On November 3, 2020, the State filed a restitution report, itemizing the economic loss to each victim pertaining to the counts to which Foster pled guilty. This loss included stolen inventory, cash, and damage to the doors and locks. The restitution requested by the victims totaled $25,385.85.

{¶7} On November 24, 2020, Foster appeared for sentencing. The trial court conducted a lengthy discussion on the record regarding the purposes and principles of felony sentencing and the sentencing factors set forth in R.C. 2929.11 and R.C. 2929.12. The trial court then imposed a maximum prison term for the second-degree felony engaging in a pattern of corrupt activity offense of 8 to 12 years; a maximum prison term for the fourth-degree felony grand theft offense of 18 months; and a maximum prison term for the fifth-degree felony breaking and entering offense of 12 months. The trial court ordered the prison terms to run consecutively for an aggregate indefinite prison term of 10 ½ years to 14 ½ years. The trial court also ordered Foster to be jointly and severally liable with his convicted co-defendants for the payment of restitution to the victims in the amount of $25,385.85.

{¶8} Foster filed this appeal, asserting the following assignments of error.

**ASSIGNMENT OF ERROR NO. 1**

**THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT TO AN INDEFINITE TERM OF PRISON ON THE ENGAGING IN A PATTERN OF CORRUPT ACTIVITY, AS THAT IS NOT A QUALIFYING FELONY UNDER THE REAGAN TOKES LAW.**

**ASSIGNMENT OF ERROR NO. 2**

**THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT TO MAXIMUM SENTENCES ON THE FOURTH AND FIFTH DEGREE FELONIES AND FURTHER ERRED WHEN IT RAN THE THREE SENTENCES CONSECUTIVE.**

**ASSIGNMENT OF ERROR NO. 3**

**THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S ORAL MOTION TO WITHDRAW HIS PLEA BEFORE HE WAS SENTENCED.**

**ASSIGNMENT OF ERROR NO. 4**

**THE TRIAL COURT ERRED IN ORDERING RESTITUTION.**

{¶9} For ease of discussion, we elect to address the assignments of error out of order.

*Third Assignment of Error*

{¶10} In his third assignment of error, Foster claims that the trial court erred when it overruled his oral motion to withdraw his guilty pleas at sentencing.

*Legal Authority*

{¶11} Criminal Rule 32.1 governs motions to withdraw a guilty plea and provides that "[a] motion to withdraw a plea of guilty or no contest may be made

only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."  While a motion to withdraw a guilty plea made prior to sentencing should be freely allowed and liberally granted, there is no absolute right to withdraw a guilty plea.  *State v. Xie*, 62 Ohio St.3d 521, 527.  Rather, the record must show there is "a reasonable and legitimate basis for the withdrawal of the plea."  *Id*.  "A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Xie*, paragraph one of the syllabus.  The decision on whether to grant a motion to withdraw a guilty plea is within the sound discretion of the trial court.  *Id.* at 521.  An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶12} When determining whether a trial court abused its discretion in denying a pre-sentence motion to withdraw a guilty plea, the reviewing court must consider nine factors: (1) whether the state will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 plea hearing; (4) the extent of the hearing on the motion to withdraw; (5) whether the trial court gave full and fair consideration to the motion; (6) whether the timing of the motion was reasonable; (7) the reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9)

whether the accused was perhaps not guilty or had a complete defense to the charge. *State v. Lane*, 3d Dist. Allen No. 1-10-10, 2010-Ohio-4819, ¶ 21. "None of the factors is determinative on its own and there may be numerous additional aspects 'weighed' in each case." *State v. North*, 3d Dist. Logan No. 8-14-18, 2015-Ohio-720, ¶ 16. Importantly, this Court has long held that a mere change of heart does not form a sufficient basis for granting withdrawal of a guilty plea. *See State v. Miller*, 3d Dist. Hardin No. 6-18-13, 2019-Ohio-2157, ¶ 17.

*The Record Pertaining to the Motion to Withdraw the Pleas*

{¶13} The record indicates that at a pretrial hearing defense counsel advocated for Foster to be considered for a Community Based Correctional Facility ("CBCF") as a form of intervention in lieu of conviction to treat Foster's ongoing drug addiction. The State indicated at this hearing that Foster was not a good candidate for a CBCF given his extensive criminal history and lack of success with rehabilitation.

{¶14} At the change of plea hearing, after Foster had already entered his guilty pleas, defense counsel again advocated for Foster to be considered for a CBCF:

> **[Defense Counsel]: Yes, your Honor. Throughout my representation of Mr. Foster, he's indicated that a large continuing drug addition [sic] is what caused any activity that he was involved in here. We would ask the Court, given the fact that none of the charges that he's entered pleas—pled guilty to here require any type of mandatory prison time, that he be considered**

**for an assessment at the West Central CBCF to determine whether he is a good candidate for participation in that program.**

**[Trial Court]: The Court's checked that box.[1] You're entitled to present that argument if you wish to present it. And anything further to come before the Court then?**

**[Defense Counsel]: Not today.**

(Oct. 22, 2020 Plea Hrg. at 42-43).

{¶15} Foster initially appeared at the sentencing hearing telephonically, but requested to appear in person. After the trial court had the opportunity to review the presentence investigation, the following exchange transpired regarding Foster's request to change his plea:

**[Trial Court]: Now, I ask—I began to ask off the record, [defense counsel], the case is set for sentencing this morning. Is Mr. Foster ready to proceed?**

**[Defense Counsel]: Your Honor, I spoke to Mr. Foster and he's indicated that he will not waive his right to be personally present. He wants to be here. He also is requesting the status of the assessment from West Central. He wants that completed before he is sentenced.**

**[Trial Court]: The Court denies the latter assessment to CBCF. The Court's review of the case indicates that Mr. Foster's been given multiple opportunities of rehabilitation and has been unsuccessful. And also, that he completed the CBCF once before in Franklin County. There was no way that we could get the assessment in this case completed after we received the PSI due to Mr. Foster's hospitalization. And there's—there's no possibility after reviewing the PSI and the extensive prior record of Mr. Foster that I would ever sentence him to the CBCF.**

---

[1] This box appeared on the written change of plea agreement and indicated that Foster was eligible for community control sanctions pending the completion and review of a presentence investigation.

**[Defense Counsel]: Your Honor, may I respond?**

**[Trial Court]: Sure.**

**[Defense Counsel]: The Court ordered in the plea agreement that he be assessed. As you indicated, he has not been assessed. I understand the problems with that. We do have a proposal for the Court. And that is Mr. Foster has a nephew that lives in Shawnee Hills. His name is Nick Hanscel. We would propose to the Court that Mr. Foster be released on his own recognizance to live with Mr. Hanscel. It is my understanding that he's been discharged from the Springfield Hospital, but they have him on oxygen for one thing. Secondly, there are multiple medical appointments he needs to attend. If he were living with his nephew, his nephew could ensure that he gets to those medical appointments.**

**[Trial Court]: I'm—I would not allow Mr. Foster to be released from jail under any circumstances. He's made statements, specifically, while he was in jail on July 29th that no one's getting him locked up again ["]on some bullshit in the penitentiary. I'll make the cops shoot me before they get me on that bus. I don't give a fuck, bro, I'm going to go ham. They don't know who they are fucking with. I don't give a fuck, bro. You got to take my life before you put me back on the fucking bus and put me in the penitentiary again.["]² In addition to that, we've had contact on the part of Mr. Foster with Tracy Chambers during the time that he was hospitalized and, specifically, violating the Court's rules of no contact rules, so—³**

**[Foster]: Excuse me. Excuse me. I never got a copy of anything for no contact until after that happened. (Inaudible) to my knowledge. (Inaudible).**

---

² It is apparent from the record that the trial court was reading a transcription of the recorded phone call that Foster made to another individual on July 29, 2020, while he was in the jail awaiting the resolution of this case.

³ The record also indicates that Ms. Chambers was Foster's longtime girlfriend and accomplice in the underlying cases. Ms. Chambers claimed that Foster forced her to participate in the breakings and enterings under threat of physical violence.

**[Trial Court]: At the original hearing, the arraignment hearing, Mr. Foster, that was held on June 24th of 2020, the Court, as part of the conditions of your bond, issued a no contact order with victim, complaining witnesses, Gabriel Olden and Tracy Chambers. The fact—**

**[Foster]: They never got (inaudible).**

**[Trial Court]: You would have gotten a copy of that paperwork back in 2000 and—early 2020. And even in the event that you did not get it, the Court pronounced that on the record. So we'll adjourn the hearing—**

**[Foster]: Yeah. I just—**

**[Trial Court]: We'll adjourn the hearing, Mr.—**

**[Foster]: No. I just—I want to change my plea. I'll take my case to trial.**

**[Trial Court]: Excuse me?**

**[Foster]: I said I change my plea. I'll take my case to trial.**

**[Trial Court]: You're before the Court for sentencing this morning, Mr. Foster, and that's what we're going to accomplish. In the event that you would—**

**[Foster]: Huh?**

**[Trial Court]: In the event that you wish to be transported, I will have you transported by the Deputies and we'll convene later on—again this morning and complete sentencing.**

**[Foster]: Yeah. I want to change my plea.**

**[Trial Court]: You don't have the right to change your plea, sir.**

**[Foster]: Well, (inaudible) I thought I was being assessed—assessed for a program that was part of my plea agreement.**

**[Trial Court]: I'll have the people from the CBCF here when you get here and they will assess you and give you a verbal report on the assessment so that you can be satisfied that you were assessed as you requested.**

**[Foster]: I still want to change my plea.**

**[Trial Court]: That—that motion is denied.**

**[Foster]: Okay. Whatever.**

(Nov. 24, 2020, Sent. Hrg. at 4-7).

{¶16} The record demonstrates that the trial court adjourned sentencing and then reconvened the hearing with Foster in person, after he underwent an assessment for a CBCF. The trial court stated on the record that the CBCF declined Foster's admission to the facility. The trial court asked if there were any further matters to be addressed prior to sentencing. Foster's counsel indicated that they were ready to proceed. The court then proceeded with sentencing and asked Foster if there was anything further he would like the court to consider. The record indicates that Foster provided an explanation about his prior phone call from jail that the trial court referenced earlier in the hearing. After Foster finished his explanation the trial court again asked, "Anything else, sir?" to which Foster replied "No. That's it, your Honor." (Nov. 24, 2020, Sent. Hrg. at 14).

*Discussion*

**{¶17}** On appeal, Foster claims it was error for the trial court to not postpone the sentencing proceeding and hold a separate hearing on his motion to withdraw his guilty pleas. However, we note that "[a] court is not required to postpone sentencing and hold a separate and distinct hearing on an oral motion to withdraw a plea." *State v. Perez*, 7th Dist. Mahoning No. 12 MA 110, 2013-Ohio-3587, ¶ 15. Moreover, we find the record demonstrates that the timing of Foster's motion was unreasonable. *See State v. Shelton*, 3d Dist. Seneca No. 13-11-07, 2011-Ohio-4893, ¶ 12 (finding the timing of a motion to withdraw a plea presented on the day of sentencing as being unreasonable). The record reflects that Foster raised his motion at the sentencing hearing only when it became evident that the trial court intended to impose a prison term, rather than sending Foster to a CBCF.

**{¶18}** Nevertheless, it is apparent from the record that the trial court gave full and fair consideration to Foster's stated basis for the motion to withdraw, which was based upon his request for a CBCF assessment. As previously noted, the trial court postponed sentencing to allow the CBCF assessment to take place and sufficiently addressed this issue with Foster on the record. Since Foster has failed to establish any valid reasons for the withdrawal, it can be presumed that the motion was made because Foster changed his mind at the last minute when it became clear that the judge would likely impose a lengthy prison term. *See e.g.*, *State v. Miller*,

3d Dist. Hardin No. 6-18-13, 2019-Ohio-2157, ¶ 16; *State v. Battersby*, 11th Dist. Lake No. 2007-L-023, 2008-Ohio-836, ¶ 59 ("[a] defendant is not entitled to withdraw his * * * plea merely because he has changed his mind or because he has learned that he will receive a harsher sentence than he had subjectively expected"); *State v. Kramer*, 7th Dist. Mahoning No. 01 CA 107, 2002-Ohio-4176, ¶ 50 (a mere change of mind about entering the plea does not justify a withdrawal).

{¶19} For all these reasons, we conclude that the trial court acted within its discretion in denying Foster's oral pre-sentence motion to withdraw his pleas at sentencing, and it did not err in declining to conduct a separate hearing on Foster's motion. Accordingly, the third assignment of error is overruled.

*First Assignment of Error*

{¶20} In his first assignment of error, Foster claims that the trial court's sentence is contrary to law. Specifically, Foster argues that the trial court was not authorized to impose an indefinite prison term for his second-degree felony engaging in a pattern of corrupt activity conviction because it is not a qualifying felony under the Regan Tokes Law.[4] On appeal, Foster cites R.C. 2901.011 as the sole basis for this contention.

---

[4] Regan Tokes Law provides that a court imposing a non-life imprisonment term for certain first and second-degree felonies committed after the law's March 22, 2019 effective date, defined as a qualifying felony, must impose a minimum prison term which may be extended by one-half the minimum term due to institutional infractions as determined by the Ohio Department of Corrections. *See State v. Acosta*, 6th Lucas Nos. L-20-1068, L-20-1069, 2021-Ohio-757, ¶ 6.

{¶21} Revised Code Section 2901.011 states in its entirety:

**The amendments to sections 109.42, 121.22, 149.43, 2903.06, 2903.08, 2903.11, 2903.12, 2905.01, 2905.32, 2907.02, 2907.03, 2907.05, 2907.07, 2919.22, 2919.25, 2921.321, 2921.36, 2923.132, 2925.01, 2925.02, 2925.03, 2925.04, 2925.041, 2925.11, 2929.01, 2929.14, 2929.142, 2929.15, 2929.19, 2929.191, 2929.20, 2929.61, 2930.16, 2943.032, 2953.08, 2967.01, 2967.021, 2967.03, 2967.13, 2967.19, 2967.191, 2967.193, 2967.26, 2967.28, 2971.03, 3719.99, 5120.021, 5120.53, 5120.66,** *and* **5120.80** *and* **the enactment of sections 2901.011, 2929.144, 2967.271,** *and* **5120.038 of the Revised Code by S.B. 201 of the 132nd general assembly constitute the Reagan Tokes Law.**

(Emphasis added).

{¶22} Foster claims that because R.C. 2923.32, the statute outlining the offense of engaging in a pattern of corrupt activity, does not appear in the list of amended statutes it is not a qualifying felony under the Regan Tokes Law, and therefore not subject to indefinite sentencing. However, in making this argument Foster overlooks the fact that in R.C. 2901.011 the Ohio Legislature defined the "Reagan Tokes Law" to constitute all of the amendments listed in R.C. 2901.011 *and* four other statutes, one of which is R.C. 2929.144.

{¶23} Revised Code Section 2929.144 sets forth the guidelines for determining a maximum prison term under indefinite sentencing and defines a "qualifying felony of the first or second degree" as "a felony of the first or second degree committed on or after the effective date of this section." R.C. 2929.144(A). The effective date of the Regan Tokes Law is March 22, 2019. Incidentally, the

record in this case clearly establishes that Foster committed his offenses after the effective date.

**{¶24}** This definition of qualifying felony is reiterated in R.C. 2929.14(A)(2)(a), which governs the permissible statutory range for prison terms for a second degree felony, and notably was the same statute by which trial court sentenced Foster. Specifically, R.C. 2929.14(A)(2)(a), states:

> **For a felony of the second degree committed *on or after the effective date of this amendment*, the prison term shall be an indefinite prison term with a stated minimum term selected by the court of two, three, four, five, six, seven, or eight years and a maximum term that is determined pursuant to section 2929.144 of the Revised Code, except that if the section that criminalizes the conduct constituting the felony specifies a different minimum term or penalty for the offense, the specific language of that section shall control in determining the minimum term or otherwise sentencing the offender but the minimum term or sentence imposed under that specific language shall be considered for purposes of the Revised Code as if it had been imposed under this division.**

**{¶25}** Based on the foregoing, we find Foster's reliance on R.C. 2901.011 to be misplaced, as Foster fails to consider the other statutes which also constitute the Regan Tokes Law. In other words, R.C. 2901.011 simply delineates what statutes and amendments comprise the Regan Tokes Law. Unlike R.C. 2929.144, R.C. 2901.011 contains no operative language defining a qualifying felony. Therefore, we conclude that under the language of R.C. 2929.144(A) the trial court correctly determined that Foster's conviction for engaging in a pattern of corrupt activity was

a qualifying second-degree felony subject to indefinite sentencing under R.C. 2929.14(A)(2)(a). Accordingly, the first assignment is overruled.

*Second Assignment of Error*

{¶26} In his second assignment of error, Foster claims that his sentence is clearly and convincingly contrary to law because the trial court failed to adequately consider the purposes and principles of felony sentencing and failed to properly apply the sentencing factors set forth in R.C. 2929.11 and R.C. 2929.12 when it imposed the maximum prison terms and ordered the prison terms to run consecutively.

*Standard of Review*

{¶27} Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that " 'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Id*. at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Relevant Authority*

**{¶28}** "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than [a] minimum sentence[ ]." *State v. Castle*, 2d Dist. Clark No. 2016-CA-16, 2016-Ohio-4974, ¶ 26; *State v. White*, 3d Dist. Marion No. 9-19-32, 2020-Ohio-717, ¶ 8. Nevertheless, when exercising its sentencing discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Kerns*, 3d Dist. Logan No. 8-18-05, 2018-Ohio-3838, ¶ 8, citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 38.

*Maximum Prison Terms*

**{¶29}** Here, the trial court imposed upon Foster an indefinite prison term with a stated minimum of 8 years and a stated maximum of 12 years for the qualifying felony of the second degree; a maximum term of 18 months for the fourth degree felony offense; and a maximum term of 12 months for the fifth degree felony offense. These prison terms are within the appropriate statutory range and are compliant with the relevant statutes, therefore they are presumptively valid. *State v. Maggette*, 3d Dist. Seneca No. 13-16-06, 2016-Ohio-5554, ¶ 31; R.C. 2929.14. Moreover, the record clearly establishes the trial court analyzed the purposes and principles of felony sentencing and the sentencing factors set forth in R.C. 2929.11

and R.C. 2929.12 factors, both at the sentencing hearing and in its judgment entry of sentence.

**{¶30}** On appeal, Foster simply disagrees with the trial court's application of these factors to the facts and circumstances of his case.

*Appellate Review of R.C. 2929.11 and R.C. 2929.12 Factors*

**{¶31}** The Supreme Court of Ohio recently clarified an appellate court's review of felony sentences under R.C. 2953.08(G)(2). *See*, *State v. Jones*, --- Ohio St.3d ---, 2020-Ohio-6729, ¶ 39. The Supreme Court ruled that R.C. 2953.08(G)(2)(a) "clearly does not provide a basis for an appellate court to modify or vacate a sentence if it concludes that the record does not support the sentence under R.C. 2929.11 and R.C. 2929.12 because * * * R.C. 2929.11 and R.C. 2929.12 are not among the statutes listed in the provision." *Id.* at ¶ 31. Thus, the Supreme Court concluded that an appellate court may not modify or vacate a felony sentence based upon a finding by clear and convincing evidence that the record does not support the trial court's "findings" under R.C. 2929.11 and R.C. 2929.12. *See id.* at ¶ 42 ("Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12.").

{¶32} The Supreme Court in *Jones* also confirmed that R.C. 2953.08(G)(2)(b) does not provide a mechanism for an appellate court to modify or vacate a felony sentence based upon a finding that the sentence is "contrary to law" because it clearly and convincingly is not supported by the record under R.C. 2929.11 and R.C. 2929.12. *Id.* at ¶ 32-39. "As a result of the Supreme Court's holding in *Jones*, when reviewing felony sentences that are imposed solely after considering the factors in R.C. 2929.11 and R.C. 2929.12, we shall no longer analyze whether those sentences are unsupported by the record. We simply must determine whether those sentences are contrary to law." *State v. Dorsey*, 2d Dist. Montgomery No. 28747, 2021-Ohio-76, ¶ 18. "A sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." *Id.* citing *State v. Brown*, 2d Dist. No. 2016-CA-53, 2017-Ohio-8416, ¶ 74; *see State v. D-Bey*, 8th Dist. Cuyahoga No. 109000, 2021-Ohio-60, ¶ 65 ("A sentence is 'contrary to law' if it falls outside the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12 when sentencing a defendant for a felony offense.").

{¶33} In sum, the record demonstrates that the prison terms imposed by the trial court in this case are within the statutory range and that the trial court considered the statutory factors in R.C. 2929.11 and 2929.12 when it imposed the maximum prison terms upon Foster. Thus, Foster's sentence is *not* clearly and convincingly contrary to law, and it must therefore be affirmed. *See State v. Slife*, 3d Dist. Auglaize No. 2-20-17, 2021-Ohio-644, ¶ 17; *Burks*, 2d Dist. Clark No. 2019-CA-70, 2021-Ohio-224, ¶ 9, ("Under *Jones*, this ends the inquiry regarding the individual sentences. In this respect, there is no basis upon which to modify or vacate either individual sentence."); *see also*, *D-Bey, supra*, ¶ 75, citing *Jones* at ¶ 39 (concluding that "this court cannot review D-Bey's sentences to determine whether they are "excessive" or otherwise not "supported by the record under R.C. 2929.11 and 2929.12.").  Thus, we find no merit to Foster's argument that the trial court's imposition of the maximum prison terms was contrary to law.

*Consecutive Sentences*

{¶34} Foster also argues that his consecutive sentences are contrary to law because the record does not support the trial court's findings under R.C. 2929.14(C)(4). To the extent that Foster is attempting to challenge the overall length of his aggregate sentence under R.C. 2929.11, the Supreme Court of Ohio has clarified that R.C. 2929.11 and 2929.12 do not apply to consecutive-sentencing review. *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, ¶ 17.  Rather,

appellate review of consecutive sentences is limited to R.C. 2929.14(C)(4), as stated

in R.C. 2953.08(G)(2)(a). *Id.* Accordingly, we cannot review the aggregate length

of Foster's consecutive sentences under R.C. 2929.11 and the issue of consecutive

sentences is limited to appellate review under R.C. 2929.14(C)(4).

{¶35} Revised Code section 2929.14(C)(4) provides as follows:

**If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:**

**(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.**

**(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.**

**(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.**

{¶36} The statute requires the trial court to make three statutory findings

before imposing consecutive sentences. *State v. Beasley*, 153 Ohio St.3d 497, 2018-

Ohio-493, ¶ 252; *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 26. The court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public; and (3) R.C. 2929.14(C)(4)(a), (b), or (c) is applicable. *Beasley* at ¶ 252. "[T]he trial court must make the requisite findings *both* at the sentencing hearing and in the sentencing entry." (Emphasis in original.) *Id*. at ¶ 253, citing *Bonnell* at ¶ 37. A trial court's failure to make the necessary findings under R.C. 2929.14(C)(4) renders the imposition of consecutive sentences contrary to law. *See Bonnell* at ¶ 37.

{¶37} Here, the record reflects that the trial court made the requisite findings both at sentencing and in its judgment entry. Notably, Foster does not dispute that the necessary findings were made. Instead, he makes several unsupported arguments based upon conjecture that the trial court's decision to impose consecutive sentences was "purely arbitrary," retaliatory against him for exercising his right to appear in person for sentencing rather than remotely, and an opportunity to impose additional time for the charges that were dismissed. (Appt. Brief at 8). Despite these claims, Foster fails to cite any evidence in the record to demonstrate that the trial court's imposition of consecutive sentences was not supported by the record.

{¶38} This notwithstanding, our review of the record reveals ample support for the trial court's findings under R.C. 2929.14(C)(4). At the sentencing hearing, the trial court observed the presentence investigation showed that Foster had an extensive criminal record consisting of numerous felony offenses. Almost all of these prior convictions included conduct similar to the felonies committed in the instant case. In particular, Foster had prior convictions for breaking and entering, safe cracking, grand theft, forgery, and engaging in a pattern of corrupt activity. Even though Foster had successfully completed a drug program at a CBCF in 2012, he quickly returned to a life of crime and addiction committing felony offenses similar to the ones he had committed in the past. In addition, the record indicates that the criminal conduct comprising the underlying offenses was pre-planned, organized, and pervasive, resulting in numerous victims suffering serious economic loss.

{¶39} In sum, we conclude that the record fully supports the trial court's findings under R.C. 2929.14(C)(4). Given that the trial court made all three of the necessary findings under R.C. 2929.14(C)(4), and that those findings are supported by the record, we find that the trial court did not err in imposing consecutive sentences upon Foster. Moreover, as already discussed, we also conclude that Foster has failed to establish that the trial court's imposition of the maximum prison

terms upon him is contrary to law. Accordingly, Foster's second assignment of error is overruled.

*Fourth Assignment of Error*

{¶40} In his fourth assignment of error, Foster challenges the trial court's order of restitution. Specifically, Foster argues that the State presented insufficient evidence to establish the amount of economic loss suffered by the victims, and therefore the trial court erred in ordering him to pay restitution.

{¶41} At the outset we note the record shows that Foster failed to object to the amount of restitution in the trial court proceedings. A failure to object to a trial court's award of restitution waives all but plain error. *See State v. Stewart*, 3d Dist. Allen No. 16-08-11, 2008-Ohio-5823, ¶ 7. Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Landrum*, 53 Ohio St.3d 107, 111 (1990).

{¶42} Revised Code section 2929.18 governs the payment of restitution and provides in relevant part:

> **(A)(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. * * * If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender.** *If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of*

> ***repairing or replacing property, and other information*, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. \* \* \***

(Emphasis added.)

{¶43} Before imposing an order of restitution, a sentencing court must determine that " the amount of restitution bears a reasonable relationship to the loss suffered." *State v. Border*s, 12th Dist. Clermont No. CA2004-12-101, 2005-Ohio-4339, ¶ 36. The amount of restitution must be determinable to a reasonable degree of certainty and supported by competent, credible evidence. *State v. Perkins*, 3d Dist. Marion No. 9-13-52, 2014-Ohio-2242, ¶ 12.

{¶44} Prior to sentencing, the State filed a restitution report compiled by the victim advocate which listed each of the 13 victims, the date the economic loss occurred, and an itemization the specific amounts comprising the total economic loss to each victim. The majority of the losses suffered by the victims was a result of the cost to repair the damage store doors and a substantial amount of cigarettes stolen from their inventories. In addition to this summary, the restitution report also included police reports, inventory loss reports, and invoices for repairs made to the store doors. The total economic loss of the victims shown in the restitution report amounted to $25,385.85  At sentencing, the trial court referenced the restitution report and stated that it would be submitted as Exhibit A. As previously noted, there was no objection from Foster regarding the restitution report at sentencing.

{¶45} After reviewing the record, we find no error, plain or otherwise, with respect to the trial court's restitution order. Specifically, we conclude that the trial court did not commit plain error in determining the amount of restitution based upon the restitution report compiled by the victim advocate and presented by the State. The information submitted in the restitution report clearly satisfied R.C. 2929.18. Contrary to Foster's assertion, the amount of the economic loss was not required to be established by testimony or other documentary evidence from insurance agencies. Accordingly, on this basis the fourth assignment of error is overruled.

{¶46} For all these reasons, the assignments of error are overruled and the judgment and sentence of the Union County Common Pleas Court is affirmed.

*Judgment Affirmed*

**ZIMMERMAN and MILLER, J.J., concur.**

**/jlr**